**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 07-80269-CIV-HURLEY/HOPKINS**

**GLEN TROTTA,**

> **Plaintiff,**

**vs.**

**LIGHTHOUSE POINT LAND**
**COMPANY, LLC, et al.,**

> **Defendants.**

_____/

**ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**
**AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**THIS CAUSE** is before the court upon defendants' motions for summary judgment [DE #

12, 17] and plaintiff's motion for summary judgment [DE # 38].  For the reasons given below, the

court will deny defendants' motions for summary judgment and grant plaintiff's motion for partial

summary judgment.

**BACKGROUND**

This is an action under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et*

*seq*., and the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*.  The facts

given below are drawn from the pleadings and record evidence, and have been viewed in the light

most favorable to the non-moving party in the disposition of each motion.  *See Thomas v. Cooper*

*Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

In May 2004, C & G Enterprises, LLC entered into a contract to purchase a condominium

unit in the Beachfront at Singer Island Condominiums from defendant Lighthouse Point Land

Company, LLC.  In September 2005, C & G assigned the contract to plaintiff Glen Trotta.  On March

26, 2007, plaintiff filed suit in this court [DE # 1], seeking damages, rescission of the contract and

a return of his deposit.  In April 2007, plaintiff closed on the purchase of the condominium.  On July 16, 2007, defendant Lighthouse Point Land Company, LLC filed the instant motion for summary judgment [DE # 12].  Defendant Toll Brothers, Inc. filed a motion for summary judgment on July 25, 2007 [DE # 17].  Plaintiff filed a cross-motion for partial summary judgment on November 26, 2007, seeking summary judgment only as to the ILSA claim [DE # 38].

**JURISDICTION**

This court has jurisdiction over this action pursuant to 15 U.S.C. § 1719 because the plaintiff's complaint raises a claim under 15 U.S.C. § 1703.  The court has jurisdiction over plaintiff's state-law claim pursuant to 28 U.S.C. § 1367(a).

Venue is proper in this district pursuant to 15 U.S.C. § 1719 because the defendant transacts business in the Southern District of Florida.

**DISCUSSION**

**A.      *Standard of Review on Motion for Summary Judgment***

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of meeting this exacting standard.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

2

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other facts immaterial and entitles the moving party to summary judgment. *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B.   *Motions for Summary Judgment*

#### 1.   *Lighthouse Point's Motion for Summary Judgment; Plaintiff's Motion for Partial Summary Judgment*

Plaintiff alleges violations of 15 U.S.C. § 1703(a) and § 1703(d), and the Florida Deceptive and Unfair Trade Practices Act. *See* Pl.'s Second Am. Compl. ¶ 15-17, 45-50.

##### a.   ILSA – § 1703(a)

The alleged violation of § 1703(a) is defendants' failure to provide a property report as required by § 1703(a)(1). Pl.'s Second Am. Compl. ¶ 15. However, 15 U.S.C. § 1702(b) exempts developments with fewer than one hundred units from the requirements of § 1703(a)(1). The parties in this case dispute whether the development has more than one hundred units.

The Beachfront development has sixty-seven condominium units. Plaintiff first responds that

because Beachfront also contains fifty-nine storage units, Beachfront actually contains 126 lots in all. Plaintiff reasons that just as condominiums are considered "lots" under the ILSA, *see Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444 (11th Cir. 1985), so must storage spaces, because like condominiums, storage spaces are for the exclusive use of each condominium owner.

However, the court determines that storage spaces are not lots within the meaning of the ILSA. Because the ILSA is intended to protect home buyers, *see McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir. 1975), its exemptions for small developments are most naturally interpreted as relating to the number of homes for sale in a particular development. In carving out exemptions of varying scope for developments with less than twenty-five lots and those with between twenty-five and ninety-nine lots, Congress demonstrated a sensitivity to the size of the developments it was regulating. But a development does not become meaningfully larger, in the sense that consumers are more likely to need regulatory protection from sophisticated sellers, merely because interests in storage spaces (or parking spaces) are sold along with the residential units. It would not make sense to extend the partial exemption contained in § 1702(b) to a building with sixty condominium units, but deny the § 1702(b) exemption to that same building if each unit owner also had the right to use a particular storage space or parking space. Therefore, the court concludes that storage spaces and parking spaces are not "lots" as the term is used in the ILSA.

Plaintiff next argues that for purposes of the ILSA, the number of lots in Beachfront must be combined with the number of lots in two Toll Brothers, Inc. developments, Ocean's Edge and Frenchman's Reserve, because they were designed and marketed pursuant to a "common promotional plan." *See* 15 U.S.C. § 1701(4). If they were, then the ILSA treats the three as a single subdivision for purposes of determining exemptions under § 1702. *See* 15 U.S.C. § 1701(3) (defining "subdivision"). A "common promotional plan" is presumed to exist between multiple

4

developments where the land is "contiguous or is known, designated, or advertised as a common

unit or by a common name." 15 U.S.C. § 1701(4).  Defendant contends that there was no common

promotional plan for Beachfront, Ocean's Edge and Frenchman's Reserve.

Regulations promulgated by the Department of Housing and Urban Development shed light

on the concept of a "common promotional plan":

> [C]haracteristics that are evaluated in determining whether or not a common
> promotional plan exists include, but are not limited to: a 10% or greater common
> ownership; same or similar name or identity; common sales agents; common sales
> facilities; common advertising; and common inventory.  The presence of one or more
> of the characteristics does not necessarily denote a common promotional plan.
> Conversely, the absence of a characteristic does not demonstrate that there is no
> common promotional plan.
> Two essential elements of a common promotional plan are a thread of
> common ownership or developers acting in concert.  However, common ownership
> alone would not constitute a common promotional plan.  HUD considers the
> involvement of all principals holding a 10 percent or greater interest in the
> subdivision to determine whether there is a thread of common ownership.  If there
> is common ownership or if the developers are acting in concert, and there is common
> advertising, sales agents, or sales office, a common promotional plan is presumed to
> exist . . . .

24 C.F.R. § 1710, Supp. II(b).  The record evidence in this case, viewed in the light most

favorable to plaintiff, demonstrates that Lighthouse Point's Beachfront and Toll Brothers, Inc.'s

Ocean's Edge and Frenchman's Reserve were not part of a common promotional plan.  Beachfront

and each of the Toll Brothers projects are on separate sites, maintained separate sales offices,

conducted separate advertising campaigns, and filed separate Prospectuses with Florida regulatory

authorities.  Although some of the same sales associates sold units at both Beachfront and Ocean's

Edge, all of the Beachfront units were sold before any reservations were taken for units at Ocean's

Edge.  Plaintiff also relies on letters sent to him by agents for Ocean's Edge after plaintiff was bound

by the contract to buy the condo at Beachfront, informing plaintiff that Ocean's Edge was under

construction and that units in Ocean's Edge were available for sale.  Pl.'s Second Am. Compl. Ex.

D, Ex. E.   But that correspondence postdated not only the execution of plaintiff's contract, but the

sales of all Beachfront units.  Witthout more evidence that the marketing activities for Beachfront

and Ocean's Edge or Frenchman's Reserve were coordinated or combined as part of a single, larger

effort, a reasonable juror could not conclude that units in the separate developments were sold as part

of a common promotional plan.  Thus, for ILSA purposes, Beachfront had only the sixty-seven lots

actually present in the Beachfront development, and was exempt from 15 U.S.C. § 1703(a)(1).

b.      ILSA – § 1703(d)

Plaintiff asserts that he is entitled to rescission of the contract because the agreement does

not contain the provisions required by 15 U.S.C. § 1703(d).  Defendants respond that the agreement

is exempt from the requirements of § 1703(d) because it is entitled to the exemption provided in §

1702(b) to developments with less than one hundred lots.

This court has previously ruled that sales agreements for lots in developments with less than

one hundred lots are subject to the requirements of § 1703(d).  *See Meridian Ventures, LLC v. One

North Ocean, LLC*, 2007 WL 4414816 (S. D. Fla. 2007).  In order to avoid *Meridian Ventures*,

defendants rely on the affidavit of Samuel B. Rothman, a former Senior Attorney in the Office of

RESPA [Real Estate Settlement Procedures Act] and Interstate Land Sales of the Department of

Housing and Urban Development. Mr. Rothman said in his affidavit that "[i]n my experience neither

the Office of RESPA and Interstate Land Sales nor the Office of General Counsel ever interpreted

the Act as requiring a development [receiving the § 1702(b) exemption] to comply with the

requirements of section 1703(d) of the Act." Rothman Aff. ¶ 6.  The court in *Meridian Ventures* did

not address the appropriate amount of deference to be accorded to administrative interpretations of

the Act.

6

As the Eleventh Circuit has recently explained, federal administrative regulations are subject to one of two levels of deference. *Buckner v. Florida Habilitation Network, Inc.*, 489 F.3d 1151, 1154-55 (11th Cir. 2007). Where an agency has promulgated rules pursuant to authority expressly delegated to it by Congress, courts must give controlling weight to those regulations unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837, 844 (1984). But where the agency interpretation is more informal, the interpretation is entitled only to the amount of deference warranted by the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

The Supreme Court has indicated that the crucial distinction is whether the agency regulation or interpretation is the considered product of the agency's exercise of authority conferred on it by Congress. *U.S. v. Mead Corp.*, 533 U.S. 218, 226-27 (2001). *Chevron* deference is to be afforded to those interpretations where the circumstances indicate that "Congress would expect the agency to be able to speak with the force of law when it addresses ambiguity in the statute or fills space in the enacted law." *Id.* at 229. On the other hand, no *Chevron* deference is to be given to agency interpretations made outside a delegation of authority to "promulgate rules or regulations." *See, e.g.*, *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 257 (1991). While these latter, non-*Chevron* interpretations represent "a body of experience and informed judgment to which courts and litigants may properly resort for guidance," they are entitled only to the lower *Skidmore* level of deference. *Mead Corp.*, 533 U.S. at 227-28.

In this case, defendants argue that the court should give *Chevron* deference to the construction of the statute referenced in Mr. Rothman's affidavit (i.e., that agreements for the sale

of lots in developments receiving only the limited § 1702(b) exemption are not subject to the requirements of § 1703(d)). In other words, defendants would have this court treat the affidavit as though it represents HUD's exercise of its authority to speak with the force of law. The court declines to do so. The affidavit is simply Mr. Rothman's personal impression of HUD's understanding of ILSA during the time he worked there. It represents neither a rule promulgated pursuant to notice-and-comment procedure, *see* 5 U.S.C. § 553, nor a rule arising from formal administrative adjudication, *see* 5 U.S.C. § 556-557, the two of which make up "the overwhelming number of [Supreme Court] cases applying *Chevron* deference." *Mead Corp.*, 533 U.S. at 230. In fact, the affidavit is not itself a HUD regulation or interpretation at all. It is merely Mr. Rothman's report of his experience while working at HUD.

The affidavit's interpretation of the law is not entitled to *Chevron* deference even if it is accepted as an accurate statement of HUD's view of the law, because the Supreme Court has said that "[i]nterpretations such as those in opinion letters-like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law–do not warrant *Chevron*-style deference." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). The affidavit appears to relate only an informal understanding within the agency, not any official agency action, policy, publication or handbook, let alone one undertaken pursuant to notice-and-comment or formal adjudication procedures. Accordingly, neither the affidavit itself, nor the agency interpretation of ILSA alluded to in the affidavit, represent HUD's exercise of authority to speak with the force of law. The court thus finds that *Skidmore* deference, not *Chevron* deference is appropriate.

Applying *Skidmore*, the court finds that only limited deference is due the HUD interpretation described in the Rothman affidavit. As the court noted earlier, under *Skidmore*, the extent of the

8

deference given an agency interpretation depends upon the "thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Buckner*, 489 F.3d at 1155 (citing *Skidmore*, 323 U.S. at 140). Here, the affidavit provides no evidence of the thoroughness of HUD's consideration of the issue. The affidavit simply says that in Rothman's experience, HUD treated agreements receiving the § 1702(b) exemption as exempt from the requirements of § 1703(d). There is no indication of how or when HUD settled on that determination, which HUD officials had input into the decision, or whether the interpretation was the product of careful and deliberate analysis. Nor can the court assess the validity of HUD's reasoning, since none is given; HUD's view is merely related as a factual matter by Mr. Rothman. Finally, the court cannot say the interpretation is consistent with earlier and later pronouncements by HUD, since there are no such pronouncements. Mr. Rothman's affidavit is the only evidence before the court of HUD's view of the statute.

Taking into account all of these factors, the court thus finds that the weight of the agency determination referenced in the Rothman affidavit is insufficient to avoid the application of *Meridian Ventures*. Following *Meridian Ventures*, the court finds that the subject agreement in this case is required to comply with § 1703(d).

Finally, defendants argue that because plaintiff did not himself purchase the lot directly from defendants, but received it through an assignment from C & G Enterprises, LLC, plaintiff has no standing to pursue an ILSA claim against defendants. The few courts to address whether assignees may pursue ILSA claims against sellers have concluded that they may not. *See Gibbes v. Rose Hill Plantation Development Co.*, 794 F. Supp. 1327, 1333-34 (D.S.C. 1992) ("Private causes of action under ILSA are limited to persons who directly purchase their property from a developer or a

developer's agent."); *Konopisos v. Phillips*, 226 S.E.2d 522, 524 (N.C. Ct. App. 1976).

However, this case differs from *Gibbes* and *Konopisos* because, as counsel acknowledged at oral argument, C & G Enterprises, LLC was essentially nothing but the alter ego of plaintiff and his then-wife (the "C" and "G" stood for "Cathy" and "Glen"). The rationale of the standing limitation expressed in *Gibbes* and *Konopisos* is that "[t]he logical beneficiary and recipient of [the information required to be disclosed] is the seller's buyer and not the buyer's assignee; the latter having never dealt with the seller in the first place." *Konopisos*, 226 S.E.2d at 524. But here, the assignee (plaintiff) did deal with the seller as the original buyer, albeit through a limited-liability company rather than as an individual. Under these circumstances, the court finds that plaintiff does have standing to pursue his ILSA claim against defendants.

In summary, the court finds that the sales agreement in this case involved a lot in a development with more than twenty-five, but less than one hundred lots. Although HUD has apparently interpreted ILSA as exempting such agreements from the requirements of § 1703(d), the court finds that only limited deference to HUD's determination is appropriate in this case, and follows *Meridian Ventures, LLC v. One North Ocean, LLC*, 2007 WL 4414816 (S. D. Fla. 2007). The court thus concludes that the sales agreement was obligated to comply with the requirements of § 1703(d), but not § 1703(a)(1). It is clear from the agreement itself, and the parties do not dispute, that the agreement does not contain the provisions required by § 1703(d). Accordingly, the court will deny defendant Lighthouse Point's motion for summary judgment and grant plaintiff's motion for summary judgment.

c.      Florida Deceptive and Unfair Trade Practices Act

Florida law prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A violation of any "law, statute, rule, or ordinance whch

proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices"

is a per se violation of the FDUTPA.  Fla. Stat. § 501.203(3)(c).  Because ILSA generally proscribes

certain unfair and deceptive trade practices, *see, e.g.*, *Aboujaoude v. Poiniciana Development Co.*

*II*, 509 F. Supp. 2d 1266, 1269 (S. D. Fla. 2007), a violation of ILSA is a violation of the FDUTPA

as well.  Therefore, having denied defendant's motion for summary judgment and granted plaintiff's

motion for summary judgment on the ILSA claim, the court will rule the same way as to plaintiff's

FDUTPA claim.[1]

### 2.      *Toll Brothers, Inc.'s Motion for Summary Judgment*

Defendant Toll Brothers, Inc.'s motion for summary judgment is dedicated to arguing that

because plaintiff's complaint had initially named "Toll Brothers, Inc., a Pennsylvania corporation"

rather than "Toll Brothers, Inc., a Delaware corporation," the court should dismiss the complaint

against it or grant summary judgment in its favor.  On January 4, 2008, the court permitted plaintiff

to amend the complaint to substitute the proper party by interlineation.  *See* DE # 50.  Therefore, Toll

Brothers, Inc.'s motion is now moot and will be denied.[2]

### CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

---

[1] Plaintiff's cross-motion for summary judgment addressed only the ILSA claim.  However, entry of summary judgment in favor of the plaintiff on the FDUTPA claim is appropriate on defendant's motion for summary judgment as to that claim, because a district court may grant summary judgment to a non-movant as long as the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried.  *See First Financial Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 115 (2d Cir. 1999).  Because Lighthouse Point has had such an opportunity, the court proceeds to grant summary judgment in favor of the plaintiff on the FDUTPA claim.

[2] Since oral argument, Toll Brothers, Inc. has filed a motion to join in defendant Toll Brothers, Inc.'s motion for summary judgment [DE # 58].  The court will grant that motion, and has considered Lighthouse Point's motion on behalf of both Lighthouse Point and Toll Brothers, Inc.

Order Denying Defendants' Motions for Summary Judgment and Granting Plaintiff's Motion for Partial Summary
    Judgment
Trotta v. Lighthouse Point Land Company, LLC et al.
Case No. 07-80269-CIV-HURLEY/HOPKINS

1.   Defendant Lighthouse Point Land Company, LLC's motion for summary judgment

     [DE # 12] is **DENIED**.

2.   Defendant Toll Brothers, Inc.'s motion for joinder in defendant Lighthouse Point

     Land Company, LLC's motion for summary judgment [DE # 58] is **GRANTED**.

     Defendant Toll Brothers, Inc.'s motion for summary judgment [DE # 17] is

     **DENIED**.

3.   Plaintiff's motion for partial summary judgment [DE # 38] is **GRANTED**.

     Summary judgment will be entered in favor of the plaintiff on both Count I and

     Count II of the second amended complaint.

     **DONE** and **ORDERED** in Chambers at West Palm Beach Florida, this 13th day of February,

2008.

                                        Daniel T. K. Hurley
                                        U.S. District Judge


*Copies provided to counsel of record*

For updated court information, visit unofficial Web site
at http://us.geocities.com/uscts